AO 241   (Rev. 5/85)

## PETITION UNDER 28 USC § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District _Eastern_ |
|---|---|
| Name _Salvador A. Castro_ | Prisoner No. _BA0734_  Case No. _3:22-cv-00201-JDP_ |
| Place of Confinement  _SATF/SP_ | |

Name of Petitioner (include name under which convicted)  Name of Respondent (authorized person having custody of petitioner)

_Salvador A. Castro/_  v. _T. Cisneros_

The Attorney General of the State of: _California_

### PETITION

1. Name and location of court which entered the judgment of conviction under attack _San Joaquin Superior Court PO Box 201022, Stockton, CA 15201_

2. Date of judgment of conviction _____

3. Length of sentence _____

4. Nature of offense involved (all counts) _Count 1: Murder_ _Count 2: Assault with a deadly weapon_ _____

_____

**FILED**

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐

   MAY 16 2022

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   CLERK, U.S. DISTRICT COURT
   EASTERN DISTRICT OF CALIFORNIA
   BY _____
   DEPUTY CLERK

   _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐   No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☑   No ☐

AO 241    (Rev. 5/85)

9.   If you did appeal, answer the following:

(a) Name of court _Third Appellate District_

(b) Result _Affirmed & Remanded For A Franklin Hearing_

(c) Date of result and citation, if known _2/14/81 - CD3-2136_

(d) Grounds raised _____

_____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _____

(2) Result _____

_____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

_____

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

_____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

_____

10.   Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes ☐     No ☐

11.   If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

AO 241    (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☐

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Name of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☐
(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.          Yes ☐    No ☐
(2) Second petition, etc.          Yes ☐    No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12.    State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
    CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241    (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: _____ See Page 8 _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

See Pages 8 thru 12 _____

_____

_____

_____

B. Ground two: _____ N/A _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____ N/A _____

_____

_____

(5)

AO 241   (Rev. 5/85)

C.  Ground three: _____ N/A _____

Supporting FACTS (state *briefly* without citing cases or law): _____

N/A

D.  Ground four: _____ N/A _____

Supporting FACTS (state *briefly* without citing cases or law): _____

N/A

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

N/A

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☑

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a)  At preliminary hearing _____

(b)  At arraignment and plea _____

AO 241    (Rev. 5/85)

(c)  At trial _____

_____

(d)  At sentencing _____

_____

(e)  On appeal _____

_____

(f)  In any post-conviction proceeding _____

_____

(g)  On appeal from any adverse ruling in a post-conviction proceeding _____

_____

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes  ☑   No   ☐

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes  ☐   No   ☑

(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b)  Give date and length of the above sentence: _____

_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes  ☐   No   ☑

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____4/8/22_____
Date

_____

Signature of Petitioner

(7)

# INTRODUCTION

Petitioner is proceeding without counsel and seeking an amended writ of habeas corpus under 28 U.S.C. § 2254 and have exhausted all his claims pertaining to the state remedies including up to the State Supreme Court.

Petitioner is requesting this Court to review his case under Rule 4 of the Rules Governing Section 2254. Petitioner conviction has been finalized.

## A. GROUND ONE:

## THE TRIAL COURT ERRED BY REFUSING PETITIONER'S REQUEST FOR SELF-DEFENSE AND IMPERFECTSELF-DEFENSE INSTRUCTIONS, WHICH WERE SUPPORTED BY THE EVIDENCE.

## SUPPORTING FACTS:

Alex Castro (Petitioner) counsel, in his opening statement, laid out the evidence that Jesse Hernandez had been killed either in self-defense or in imperfect self-defense. (6 RT 1672-1677.) Counsel plainly expected that Petitioner would testify. (6 RT 1676.) This argument is based entirely on the evidence actually presented, not on counsel's opening statement. Counsel requested instructions on both his theories of defense, but the judge refused them. (7 RT 1882-1887, 1893, 1899-1900; see CALCRIM Nos. 505 & 571.) The judge forbade him to argue either theory. (7 RT 1894, 1903.) The judge agreed to instruct on voluntary manslaughter in the heat of passion (7 RT 1887; 3 CT 655.) Having been forbidden to argue the theory that he believed best fit the facts, Petitioner's counsel argued voluntary manslaughter. (7 RT 1971-1972, 1978-1979.) During deliberations, the jury asked questions indicating an interest in self-defense. (8 RT 2051; 3 CT 584.) The denial of the instructions and the corresponding limitation on defense argument impaired Petitioner's constitutional rights to due process and trial by jury. The constitutional violations were prejudicial and require reversal.

*A. Legal Principles Concerning Entitlement to Instructions*

A defendant is entitled to instructions sua sponte – *a fortiori*, entitled to them on request as here – "on all theories of a lesser included offense that find substantial support in the evidence." Even evidence that is "not … of a character to inspire belief" or "incredible … testimony of a defendant" is "substantial" for this purpose. Conversely, it is not necessary that the defendant testify in order to be entitled to instructions on self-defense, either complete or imperfect.

The judge's belief that the evidence of heat of passion was stronger than the evidence of self-defense did not justify instruction only on what he perceived to be the stronger theory.

Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused. The question one to be reviewed de novo by this court, without deference to the trial judge's view of the evidence.

Refusal of a requested lesser-included offense instruction is federal constitutional error, which requires reversal unless the prosecution can prove it harmless beyond a reasonable doubt. When a lesser-included offense instruction is requested, it becomes a defense theory to which federal constitutional rights of due process, trial by jury, and ability to present a defense apply. A fortiori, the same rule applies to a complete defense like self-defense.

*B. Factual Basis for the Self-Defense and Imperfect Self-Defense Instructions*

Petitioner's counsel explained how the evidence, particularly the DNA evidence, supported the requested instructions. (7 RT 1883-1884, 1886-1887.) Victim Hernandez' DNA was found on the handles of both of the golf clubs found outdoors. (Items 3A, 8A, 8B; 5 RT 1277, 1316, 1322-1324, 1330, 1336-1337.) Petitioner's DNA was found on the shaft of one of the clubs (Item 3B; 5 RT 1319, 1331.) The jury could conclude that Mr. Hernandez swung the clubs at Petitioner. The presence of the third golf club inside the Hernandez house, which neither of the Castro brothers ever entered, strengthens the

inference that Mr. Hernandez brought the clubs to the fight and was the initial aggressor.

Conversely, the Castro brothers' DNA was matched to the handle of the fishing rod, and Mr. Hernandez' DNA to the shaft. (Items 4A & 4B; 5 RT 1319-1320, 1332, 1334.) Evidence that the Castro's swung a bamboo fishing rod at Mr. Hernandez could create a reasonable doubt in the minds of the jury about the prosecutor's theory that the Castro's brought a knife to the fight and were the initial aggressors. (7 RT 1884.)

During the instruction conference, the prosecutor led the judge astray by responding in a way inconsistent with the governing legal standard. She recited only the evidence favorable to the prosecution, the evidence that the Castro brothers were the initial aggressors. She did not mention the evidence referred to by defense counsel or attempt to explain why it was insubstantial and could not be believed by a reasonable juror. (7 RT 1885-1886.) She erroneously stated that he defense was not entitled to the instruction because its theory was not "substantiated by the independent witnesses." (7 RT 1886.) The test for entitlement to instructions is based on the evidence that is present to support the theory, not on evidence that is not before the jury but, if it were present, would support the theory. The DNA and other physical evidence was just as "independent" of the Castro brothers as were the neighbors watching from across the street. The jury could find self-defense or imperfect self-defense based on the DNA evidence and other evidence argued by Petitioner's counsel, notwithstanding that he could not point to eyewitness testimony to bolster his theory of defense.

*C. Prejudice from the refusal to Instruct*

Respondent will be unable to prove the failure to instruct harmless beyond a reasonable doubt.

Having decided not to instruct on either form of self-defense, the judge forbade Petitioner's counsel to argue those theories. (7 RT 1894, 1903.) This is an artifact of the ruling on the instructions, not an independent constitutional violation, but it contributes to the prejudice. Counsel's ability to present the jury with exculpatory arguments, and

arguments for reduced culpability, was impaired.

The jury's questions indicate a reasonable likelihood that the jury would have been receptive to the theories they were not permitted to consider or even hear about. During deliberations, the jury requested a rereading "of DNA testimony regarding golf clubs," the evidence that would have supported a self-defense theory. (3 CT 584.)

A juror also asked a question indicating an interest in self-defense: "So is showing up with a weapon after being threatened, does that count as an assault?" (8 RT 2051.) The judge gave the correct answer, "no," but his ensuing discussion was focused on count 2, the assault against Jorge Rodriguez for which both defendants were acquitted. The artificial limitation the judge placed on the defense theory precluded the judge – and the jury – from exploring the broader consequences of the correct "no" answer to the juror's question. If anyone was "threatened" on Main Street, it was Mr. Hernandez and Jorge Rodriguez, rather than the Castro brothers. (5 RT 1411-1413.) The question seems to have entertained the possibility that Mr. Hernandez and Jorge Rodriguez obtained available weapons – the golf clubs, fishing rod, or knife – from inside the house, and that they were the first to introduce weapons into what had been on a verbal confrontation on Main Street.

The jury was also entitled to consider that the bad blood between the Castro's and Messrs. Hernandez and Rodriguez had been of long standing; it didn't start that evening on Main Street. Rodriguez perceived, rightly or wrongly, that Petitioner had snitched on his brother, and that issue had continued to fester. (5 RT 1373; 6 RT 1530, 1577-1578.)

The availability of heat of passion to counsel and to the jury did not make the instructional error harmless. While self-defense and the heat of passion can co-occur, as they did in **Breverman**, they need not. The perceived need to use deadly force in self-defense may, or may not, cause a person "to act rashly and without due deliberation." (CALCRIM No. 570 [definition of heat of passion].) In **Breverman**, the Supreme Court rejected the proposition that instructions on imperfect self-defense obviated the need to instruct on heat of passion.

There was a plausible view of the evidence for which the jury had no instructions available: an intentional killing in actual or imperfect self-defense. Under the circumstances, the first-degree murder verdict does not shed light on what verdict the jury

might reasonably have reached if presented with the full range of options suggested by the evidence.

The instructional error requires reversal.



**PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

**PROOF OF SERVICE BY MAIL**

I the undersigned, hereby declare:

1. I am a citizen of the United States: 2. I am over the age of 18 years and not a party to this case; 3. I am a resident of Kings County, in California. My mailing address is:

SATF/SP
PO Box 5244
Corcoran, CA  93212

On April 21, 2022, I served a true copy or original copy of the following: **FIRST AMENDED PETITON,** by placing said document(s) in a sealed postage paid envelope into the SATF/SP at Corcoran, mailbox for delivery to the United States Post Office at Corcoran, California, addressed as followed:

Eastern District of California
Attn:  Clerk of the Court
501 "I" Street., Ste 4-200
Sacramento, CA  95814

And that this declaration was executed under the penalty of perjury of the laws in California and the United States of America at Corcoran, California 93212-5244, on April 21, 2022.

**EDWARD B. SPENCER**

PRINT NAME (DECLARANT)

SIGNATURE (DECLARANT)

# EXHIBIT

# A

SUPREME COURT
FILED

MAY 2 6 2021

Jorge Navarrete Clerk

Deputy

Court of Appeal, Third Appellate District - No. C082126, C089047

### S267801

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

THE PEOPLE, Plaintiff and Respondent,

v.

JOSEPH ANTHONY CASTRO et al., Defendants and Appellants.

RECEIVED

MAY 2 8 2021

By ROBERT D. BACON
ATTORNEY AT LAW

-----------------------------------------------------------------------

THE PEOPLE, Plaintiff and Respondent,

v.

JOSEPH ANTHONY CASTRO, Defendant and Appellant.

The petitions for review are denied.

CANTIL-SAKAUYE

*Chief Justice*

# EXHIBIT

# B



## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) |
| Plaintiff and Respondent, | ) No. C082126 |
| | ) |
| vs. | ) |
| | ) San Joaquin |
| JOSEPH ANTHONY CASTRO, et al. | ) Superior Court |
| | ) Nos. CR20156572, |
| Defendants and Appellants. | ) SF131593A et al. |
| | ) |

## APPELLANT SALVADOR "ALEX" CASTRO'S PETITION FOR REVIEW TO EXHAUST STATE REMEDIES
### (Rule 8.508)

From a Decision of the Court of Appeal,
Third Appellate District
on Appeal from the Superior Court of the State of California
in and for the County of San Joaquin
The Honorable Bernard J. Garber, Judge

ROBERT D. BACON
State Bar No. 73297
484 Lake Park Avenue, PMB 110
Oakland, California 94610
Telephone (510) 834-6219
E-mail: bacon2254@aol.com

Attorney for Salvador "Alex" Castro

1

# Table of Contents

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statement of the Case** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1.  **The trial court erred by refusing Alex's request for self-defense and imperfect self-defense instructions, which were supported by the evidence** . . . . . . . . . . . . . . . . . . 8

    A.  *Legal Principles Concerning Entitlement to Instructions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.  *Factual Basis for the Self-Defense and Imperfect Self-Defense Instructions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.  *Prejudice from the Refusal to Instruct* . . . . . . . . . . . 12

2.  **It was error to instruct the jury that the prosecution "presented evidence of a conspiracy"** . . . . . . . . . . . . . 16

3.  **The court erred in explaining the difference between first- and second-degree murder in response to a jury inquiry** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4.  **Ineffective assistance of counsel for failure to object to improper instructions and failure to request proper instructions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5.  **Prosecutorial misconduct in closing argument misstating the burden of proof and ineffective assistance of counsel for failure to object** . . . . . . . . 22

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Certificate of Petition Length** . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Declaration of Service by Mail and E-mail** . . . . . . . . . . . . . 25

\* \* \* \* \*

2

**Table of Authorities**

**Cases**

*Chapman v. California* (1967) 386 U.S. 18                    12

*Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663       10

*In re Rodriguez* (1981) 119 Cal.App.3d 457                   23

*Mak v. Blodgett* (9th Cir. 1992) 970 F.2d 614                22

*Mathews v. United States* (1988) 485 U.S. 58             10, 11

*People v. Breverman* (1998) 19 Cal.4th 142          9, 10, 11, 14

*People v. Carmen* (1951) 36 Cal.2d 768                   9, 14

*People v. Centeno* (2014) 60 Cal.4th 659.                    22

*People v. Cortez* (1998) 18 Cal.4th 1223                     16

*People v. DeLeon* (1992) 10 Cal.App.4th 815                   9

*People v. Franklin* (2016) 63 Cal.4th 261                     5

*People v. French* (2008) 43 Cal.4th 36                       23

*People v. Hill* (1998) 17 Cal.4th 800                        23

*People v. Holt* (1984) 37 Cal.3d 436                         23

*People v. Jackson* (1991) 235 Cal.App.3d 1670               23

*People v. Johnwell* (2004) 121 Cal.App.4th 1267             15

*People v. Lemus* (1988) 203 Cal.App.3d 470                  10

*People v. Ponce* (1996) 44 Cal.App.4th 1380                 13

*People v. Rodriguez* (2018) 4 Cal.5th 1123                    6

*People v. Sakarias* (2000) 22 Cal.4th 596                   18

*People v. Sandoval* (2015) 62 Cal.4th 394                   15

*People v. Thomas* (1945) 25 Cal.2d 880                      21

*People v. Waidla* (2000) 22 Cal.4th 690                     10

*People v. Williams* (2008) 161 Cal.App.4th 705             17

*People v. Wilson* (1967) 66 Cal.2d 749                    9, 10

*People v. Zerillo* (1950) 36 Cal.2d 222                     23

*Sandstrom v. Montana* (1979) 442 U.S. 510                   16

*Stevenson v. United States* (1896) 162 U.S. 313            10

*Strickland v. Washington* (1984) 466 U.S. 668              20

*United States v. Wallace* (9th Cir. 1988) 848 F.2d 1464     23

## Constitutional Provisions and Court Rules

U.S. Constitution:
Amendment 6 .......................................................... 22
Amendment 14 ......................................................... 22

California Rules of Court:
Rule 8.200 ............................................................. 7
Rule 8.500 ............................................................. 6
Rule 8.504 ............................................................ 24
Rule 8.508 ............................................................. 5

## Other Authorities

CALCRIM:
No. 224 ............................................................... 22
No. 225 ............................................................... 22
No. 416 ............................................................ 16, 17
No. 505 ........................................................... 8, 9, 10
No. 570 ............................................................... 14
No. 571 ................................................................ 8

* * * * *

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA,  )
                                     )
        Plaintiff and Respondent,    ) No. C082126
                                     )
              vs.                  )
                                   ) San Joaquin
JOSEPH ANTHONY CASTRO, et al.  ) Superior Court
                                   ) Nos. CR20156572,
        Defendants and Appellants.  ) SF131593A et al.
                                   )

**APPELLANT SALVADOR "ALEX" CASTRO'S
PETITION FOR REVIEW
TO EXHAUST STATE REMEDIES
(Rule 8.508)**

TO THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF
JUSTICE OF CALIFORNIA, AND TO THE HONORABLE
ASSOCIATE JUSTICES OF THE SUPREME COURT OF
CALIFORNIA:

Salvador "Alex" Castro respectfully petitions this Court to
review the decision of the Court of Appeal, Third District, affirm-
ing his conviction for first-degree murder.[1] The opinion of the
Court of Appeal was filed on February 16, 2021, and is appended
to this petition. It is cited herein as "Op." Co-defendant Joseph
Castro filed a petition for rehearing but Alex did not. The peti-

---

1. The Court of Appeal remanded for an evidentiary
proceeding in aid of a future youth offender parole hearing. (Op.
43-44; see *People v. Franklin* (2016) 63 Cal.4th 261.) That issue
is unrelated to the issues in this petition.

tion for rehearing resulted in a modification of the opinion on
March 8, 2021, which changed the judgment but is unrelated to
the issues presented in this petition.

As to Alex, the case presents no grounds for review under
Rule 8.500(b), and this petition is filed solely to exhaust state
remedies for federal habeas corpus purposes. But if review is
granted to co-defendant Joseph Castro on an issue common to
both defendants, the review should extend to Alex also. (See
*People v. Rodriguez* (2018) 4 Cal.5th 1123, 1130.)

## Statement of the Case

Salvador "Alex" Castro and his older brother Joseph Castro
(referred to herein by first names) fought with Jesse Hernandez
and Jorge Rodriguez in front of Mr. Hernandez' home in Stockton
on May 30, 2015. Mr. Hernandez was fatally stabbed. The
evidence indicated that Alex stabbed him. Alex's defense was
that Mr. Hernandez was the initial aggressor and that Alex
stabbed him in self-defense. (6 RT 1675-1677.) The judge refused
Alex's request to instruct on self-defense and imperfect self-
defense, and refused to allow his counsel to argue those theories
of defense. (7 RT 1882-1887, 1893-1894, 1899-1900, 1903; see
argument 1, *infra*.)

The brothers were tried together. Both were convicted of
first-degree murder. Both were acquitted on a second count,
assault with a deadly weapon against Mr. Rodriguez.

6

More detailed statements are at Op. 2-8 and SCAOB 6-15.[2]

Arguments 2, 3, 4, and 5 herein were fully briefed in the Court of Appeal by Joseph.  Pursuant to Rule 8.200(a)(5), Alex submitted a Notice of Joinder as to these issues.

\* \* \* \* \*

2.  Page numbers in Alex's opening brief are cited to "SCAOB."  Page numbers in Joseph's opening brief are cited to "JCAOB."

7

## Argument

1. **The trial court erred by refusing Alex's request for self-defense and imperfect self-defense instructions, which were supported by the evidence [Section 15 of the Court of Appeal opinion]**

Alex Castro's counsel, in his opening statement, laid out the evidence that Jesse Hernandez had been killed either in self-defense or in imperfect self-defense. (6 RT 1672-1677.)[3] He requested instructions on both his theories of defense, but the judge refused them. (7 RT 1882-1887, 1893, 1899-1900; see CALCRIM Nos. 505 & 571.) The judge forbade him to argue either theory. (7 RT 1894, 1903.) The judge agreed to instruct on voluntary manslaughter in the heat of passion (7 RT 1887; 3 CT 655.) Having been forbidden to argue the theory that he believed best fit the facts, Alex's counsel argued voluntary manslaughter. (7 RT 1971-1972, 1978-1979.) During deliberations, the jury asked questions indicating an interest in self-defense. (8 RT 2051; 3 CT 584.) The denial of the instructions and the corresponding limitation on defense argument impaired Alex's constitutional rights to due process and trial by jury. The constitutional violations were prejudicial. (SCAOB 16-21.)

The Court of Appeal weighed the evidence and concluded that the jury would necessarily conclude that the Castros were the initial aggressors, precluding either self-defense or imperfect

---

3. Counsel plainly expected that Alex would testify. (See 6 RT 1676.) He eventually elected not to. (7 RT 1836, 1976.) The argument in this petition is based entirely on the evidence actually presented, not on counsel's opening statement.

self-defense. (Op. 42-43.) The Court of Appeal erred by failing to view the evidence favorably to the defense theory, as required by the decisions of this Court discussed immediately *infra*.

A. *Legal Principles Concerning Entitlement to Instructions*

A defendant is entitled to instructions sua sponte – *a fortiori,* entitled to them on request as here – "on all theories of a lesser included offense that find substantial support in the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) Even evidence that is "not . . . of a character to inspire belief" or "incredible . . . testimony of a defendant" is "substantial" for this purpose. (*People v. Wilson* (1967) 66 Cal.2d 749, 762; accord, *People v. Carmen* (1951) 36 Cal.2d 768, 773.) Conversely, it is not necessary that the defendant testify in order to be entitled to instructions on self-defense, either complete or imperfect. (*People v. DeLeon* (1992) 10 Cal.App.4th 815, 824.)

In *Breverman,* the jury was instructed on complete self-defense, and the contested question was whether the defendant was entitled to instruction on a heat-of-passion theory of voluntary manslaughter as a lesser included offense. (19 Cal.4th at p. 148.) But *Breverman*'s rationale extends to both "defenses" and "lesser included offenses." (*Id.* at p. 157; Bench Notes to CALCRIM No. 505 (2020-2 ed.) p. 259.) And *Wilson* concerned an instruction on unconsciousness, which like self-defense is a complete defense, not a lesser included offense. The standard discussed in the preceding paragraph therefore governs Alex's

9

entitlement to instruction on *both* complete and imperfect self-defense, even though the former is not literally a lesser included offense. (See *People v. Lemus* (1988) 203 Cal.App.3d 470, 477-478 [applying substantially the same standard to conclude defendant was entitled to instruction on self-defense]; see also Related Issues Note to CALCRIM No. 505, *supra*, at p. 260 ["Most courts hold that an instruction on imperfect self-defense is required in every case in which a court instructs on perfect self-defense"].)

The trial judge's belief that the evidence of heat of passion was stronger than the evidence of self-defense (7 RT 1883, 1887) did not justify instructing only on what he perceived to be the stronger theory. (*Breverman*, 19 Cal.4th at p. 155.)

"Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." (*Wilson*, 66 Cal.2d at p. 763; accord, *Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 674.) The question is one to be reviewed de novo, without deference to the trial judge's view of the evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Refusal of a requested lesser included offense instruction is federal constitutional error which requires reversal unless the prosecution can prove it harmless beyond a reasonable doubt. When a lesser included offense instruction is requested, it becomes a defense theory to which federal constitutional rights of due process, trial by jury, and ability to present a defense apply. (*Mathews v. United States* (1988) 485 U.S. 58, 63, referring to *Stevenson v. United States* (1896) 162 U.S. 313.) A fortiori, the

10

same rule applies to a complete defense like self-defense; *Mathews* concerned the complete defense of entrapment, not a lesser-included offense.[4]

B.    *Factual Basis for the Self-Defense and Imperfect Self-Defense Instructions*

Alex's counsel explained how the evidence, particularly the DNA evidence, supported the requested instructions.  (7 RT 1883-1884, 1886-1887.)  Victim Hernandez' DNA was found on the handles of both of the golf clubs found outdoors.  (Items 3A, 8A, 8B; 5 RT 1277,1316, 1322-1324, 1330, 1336-1337.)  Alex Castro's DNA was found on the shaft of one of the clubs.  (Item 3B; 5 RT 1319, 1331.)  The jury could conclude that Mr. Hernandez swung the clubs at Alex Castro.  The presence of a third golf club inside the Hernandez house, which neither of the Castro brothers ever entered, strengthens the inference that Mr. Hernandez brought the clubs to the fight and was the initial aggressor.

Conversely, the Castro brothers' DNA was matched to the handle of the fishing rod, and Mr. Hernandez' DNA to the shaft.  (Items 4A & 4B; 5 RT 1319-1320, 1332, 1334.)  Evidence that the Castros swung a bamboo fishing rod at Mr. Hernandez could create a reasonable doubt in the minds of the jury about the

---

4.  *Cf. Breverman,* 19 Cal.4th at p. 178 ["error in failing **sua sponte** to instruct . . . on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under *Watson*"; emphasis added].

prosecutor's theory that the Castros brought a knife to the fight and were the initial aggressors. (7 RT 1884.)

During the instruction conference, the prosecutor led the judge astray by responding in a way inconsistent with the governing legal standard. She recited only the evidence favorable to the prosecution, the evidence that the Castro brothers were the initial aggressors. She did not mention the evidence referred to by defense counsel, or attempt to explain why it was insubstantial and could not be believed by a reasonable juror. (7 RT 1885-1886.) She erroneously stated that the defense was not entitled to the instruction because its theory was not "substantiated by the independent witnesses." (7 RT 1886.)

The test for entitlement to instructions is based on the evidence that *is* presented and supports the theory, not on evidence that is *not* before the jury but, if it were presented, would support the theory. The DNA and other physical evidence was just as "independent" of the Castro brothers as were the neighbors watching from across the street who testified for the prosecution. The jury could find self-defense or imperfect self-defense based on the DNA evidence and other evidence argued by Alex's counsel, notwithstanding that he could not point to eyewitness testimony to bolster his theory of defense.

C.    *Prejudice from the Refusal to Instruct*

Respondent will be unable to prove the failure to instruct harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

12

Having decided not to instruct on either form of self-defense, the judge forbade Alex's counsel to argue those theories. (7 RT 1894, 1903.) This is an artifact of the ruling on the instructions, not an independent constitutional violation (see, e.g., *People v. Ponce* (1996) 44 Cal.App.4th 1380, 1388), but it contributes to the prejudice. Counsel's ability to present the jury with exculpatory arguments, and arguments for reduced culpability, was impaired.

The jury's questions indicate a reasonable likelihood that the jury would have been receptive to the theories they were not permitted to consider or even hear about. During deliberations, the jury requested a rereading "of DNA testimony regarding golf clubs," the evidence that would have supported a self-defense theory. (3 CT 584.)

A juror also asked a question indicating an interest in self-defense: "So is showing up with a weapon after being threatened, does that count as an assault?" (8 RT 2051.) The judge gave the correct answer, "no," but his ensuing discussion was focused on count 2, the assault against Jorge Rodriguez for which both defendants were acquitted. The artificial limitation the judge placed on the defense theory precluded the judge – and the jury – from exploring the broader consequences of the correct "no" answer to the juror's question. If anyone was "threatened" on Main Street before the fight, it was Messrs. Hernandez and Rodriguez, rather than the Castro brothers. (5 RT 1411-1413.) The question seems to have entertained the possibility that Messrs. Hernandez and Rodriguez obtained available weapons –

13

the golf clubs, fishing rod, or knife – from inside the house, and that they were the first to introduce weapons into what had been only a verbal confrontation on Main Street.

The jury was also entitled to consider that the bad blood between the Castros and Messrs. Hernandez and Rodriguez had been of long standing; it didn't start that evening on Main Street. Rodriguez perceived, rightly or wrongly, that Alex Castro had snitched on his brother, and that issue had continued to fester. (5 RT 1373; 6 RT 1530, 1577-1578.)

The availability of a heat of passion theory to counsel and to the jury did not make the instructional error harmless. While self-defense and the heat of passion can co-occur, as they did in *Breverman* (see 19 Cal.4th at pp. 163-164), they need not. The perceived need to use deadly force in self-defense may, or may not, cause a person "to act rashly and without due deliberation." (CALCRIM No. 570 [definition of heat of passion]; 3 CT 714.) In *Breverman*, the Court rejected the proposition that instructions on imperfect self-defense obviated the need to instruct on heat of passion. (19 Cal.4th at p. 153.)

Weighing inconsistent evidence "is a question within the exclusive province of the jury." (*Carmen*, 36 Cal.2d at p. 773.) For present purposes, it is the inferences favorable to the defense that matter. The jury must be given a range of instructions sufficient to decide the case no matter which of the potential inconsistent factual inferences they find most persuasive.

14

The jury was not compelled to reject the DNA evidence, and the nature of Mr. Hernandez' wounds does not answer the question who was the initial aggressor.

There was a plausible view of the evidence for which the jury had no instructions available: an intentional killing in complete or imperfect self-defense. Under the circumstances, the first-degree murder verdict does not shed light on what verdict the jury might reasonably have reached if presented with the full range of options suggested by the evidence.

In the Court of Appeal, respondent did not argue in the alternative that, if the failure to instruct was error, the error was harmless. Respondent thereby forfeited any argument that Alex Castro was not prejudiced by the federal constitutional violation. (See *People v. Sandoval* (2015) 62 Cal.4th 394, 445-446; *People v. Johnwell* (2004) 121 Cal.App.4th 1267, 1278.) In any event, the jury's questions about self-defense would make any such alternative argument unrealistic.

The instructional error requires reversal.

* * * * *

15

2.    **It was error to instruct the jury that the prosecution "presented evidence of a conspiracy" [Section 7 of the Court of Appeal opinion]**

Instructing the jury that the prosecution had "presented evidence of a conspiracy" (3 CT 699 [CALCRIM No. 416]) had the effect of instructing them that the prosecution had presented evidence of premeditation. "[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated first degree murder." (*People v. Cortez* (1998) 18 Cal.4th 1223, 1226 [internal citations omitted].)

"That statement invaded the province of the jury and reduced the People's burden of proof by directing the jury to resolve a contested issue of fact in the People's favor. Whether the circumstantial evidence could be viewed as 'evidence of a conspiracy' was a question of fact for the jury to decide. It was error for the judge to infer a conspiracy from circumstantial evidence and to instruct the jury that there was 'evidence of a conspiracy,' as if that were a given fact." (JCARB 42.)  When the jury is improperly instructed that it must draw a particular inference, it is a violation of due process. (*Sandstrom v. Montana* (1979) 442 U.S. 510, 521-523.)

The contested issue as to Alex was his culpable mental state, that is, whether or not he premeditated murder.  Hence the erroneous instruction identifying "evidence of a conspiracy" is prejudicial error as to Alex even though the case was tried on the theory that he was culpable as the direct perpetrator and not merely as a co-conspirator.

16

The instruction, CALCRIM No. 416, was given over objection. (3 CT 641; 7 RT 1874-1876.) The argument that it was erroneous is made in detail at JCAOB 101-113 and JCARB 42-46. The Court of Appeal rejected the argument on the basis of *People v. Williams* (2008) 161 Cal.App.4th 705. (Op. 22-23.) The challenge to the instruction in *Williams* actually presented somewhat different issues and does not control the present case, for the reasons stated at JCAOB 106-108 and JCARB 44.

* * * * *

17

3.    **The court erred in explaining the difference between first- and second-degree murder in response to a jury inquiry**
**[Section 8 of the Court of Appeal opinion]**

The judge responded to a question from the jury about the differences between the degrees of murder (3 CT 583) by giving the jury "classic" examples of second-degree murder that were very different from the facts of this case. He then said, "If you find the defendant is guilty of murder, then you have to decide is it first-degree or second-degree." Only several paragraphs later did he refer to the presumption of second-degree and the prosecution's burden of proof as to degree. (8 RT 2036-2039.)

The multiple problems with the judge's lengthy oral response are discussed at JCAOB 114-126 and JCARB 47-49. An inaccurate statement of the elements of an offense, or of the burden of proof, violates the defendants' rights under the federal due process clause. (*People v. Sakarias* (2000) 22 Cal.4th 596, 624-625; JCAOB 117.) This issue applies equally to both defendants.[5]

The Court of Appeal's brief reference to the "essence" of the judge's oral response assumed legal acumen that the jury cannot be expected to possess. The Court of Appeal identified what it believed was "[m]ost important[]" in the judge's remarks. The proper inquiry is whether the *jury* would have divined what is

_____

5.    There was no contemporaneous objection; the merits of the issue are presented by virtue of the claim of ineffective assistance of counsel for failure to object, immediately *infra*. (See Op. 25.)

18

*legally* most important in the judge's lengthy comments.  (Op. 26;
cf. JCARB 48.)  This is an area in which courts must tread with
caution, as the Court of Appeal did not do here.  Justice Cardozo,
after many years on the New York Court of Appeals deciding
appeals in capital cases, said he was not sure he understood the
difference between the degrees of murder, to say nothing of a jury
who only heard it once.  (Cardozo, *What Medicine Can Do for Law*
(1928), reprinted in Selected Writings of Benjamin Nathan
Cardozo (1947) at pp. 383-384.)

\* \* \* \* \*

19

4.    **Ineffective assistance of counsel for failure to object to improper instructions and failure to request proper instructions [Section 9 of the Court of Appeal opinion]**

Alex's counsel (and Joseph's also) was ineffective insofar as he failed to object to the judge's oral response to the question from the jury during deliberations about the difference between the degrees of murder.  (JCAOB 127-128, referring to *Strickland v. Washington* (1984) 466 U.S. 668.)[6]  This argument is linked to the merits of the foregone objection, discussed in argument 3, immediately *supra*.  The Court of Appeal rejected it by reference to its discussion of the merits of the foregone objection.  (Op. 27.)

The ineffective assistance was prejudicial.  A précis of the evidence on which a properly instructed jury could have returned a more favorable verdict as to Alex, and the manner in which other questions from the jury – in addition to the question at issue here – indicate the jury's openness to such a verdict, is in argument 1.B and 1.C, *supra*.  That evidence and those questions from the jury demonstrate that the ineffective assistance was prejudicial insofar as it impaired the ability of the jury to return a verdict as to Alex other than first-degree murder.

Moreover, while Alex's counsel did not argue for a verdict of second-degree murder, he argued a theory – heat of passion – patently inconsistent with premeditation.  Provocation insuffi-

_____

6.  The cited portion of Joseph's brief also refers to other instances of ineffective assistance of counsel that relate only to Joseph and not to Alex.

cient to reduce the offense to manslaughter "might nevertheless be adequate to negative or raise a reasonable doubt as to the idea of premeditation or deliberation, leaving the homicide as murder of the second degree." (*People v. Thomas* (1945) 25 Cal.2d 880, 903.) The judge's erroneous description of the degrees of murder impaired the jury's ability to give effect to this principle to Alex's benefit.

\* \* \* \* \*

21

**5.   Prosecutorial misconduct in closing argument mis-
      stating the burden of proof and ineffective assistance
      of counsel for failure to object
      [Section 10 of the Court of Appeal opinion]**

The prosecutor's argument blurred the distinction between
a reasonable interpretation of circumstantial evidence (CALCRIM
Nos. 224 & 225) and the standard of proof beyond a reasonable
doubt. (7 RT 1913-1914, 1941, 1990, all quoted at JCAOB 133-
134; cf. *People v. Centeno* (2014) 60 Cal.4th 659.) The argument
improperly reduced the prosecution's burden of proof. Defense
counsel's failure to object manifested ineffective assistance of
counsel. (U.S. Const., Amends. 6 & 14; JCAOB 133-141; JCARB
52-56.)

The Court of Appeal concluded that the argument was
unobjectionable because, unlike in *Centeno*, the prosecutor did not
give the jury a misleading hypothetical or illustrate her argument
with a misleading visual. (Op. 31.) Joseph's reply brief informed
the court that the argument was in fact objectionable based on a
different holding of *Centeno*. The argument in *Centeno* was
objectionable for other reasons also, and the argument in the
present case was comparable. (JCARB 52.)

The prosecutor's misleading argument was prejudicial as to
Alex.[7] While it was not disputed that Alex was the perpetrator,

---

7. The Court must address the cumulative prejudicial
effect of all errors that occurred. Multiple errors, each of which
might be harmless had it been the only error, can combine to
create prejudice and compel reversal, even if any one of them,
standing alone, would have been harmless. (*Mak v. Blodgett* (9th
(continued...)

the evidence was not one-sided concerning his culpable mental state. This is not a case in which error could be found harmless because the evidence that he was not just guilty, but guilty of first-degree murder, is "overwhelming *and* uncontested." (*People v. French* (2008) 43 Cal.4th 36, 53 [emphasis added].) The evidence on which the jury could have returned a more favorable verdict as to Alex, had they not been misled by the prosecutor's argument, is summarized in argument 1.B and 1.C, *supra*.

Moreover, the jury questions during deliberations – none of them specific to either defendant – also contribute to the prejudice. These questions indicate uncertainty among the jurors about whether the prosecution had proven its case for first-degree murder, even though the prosecutor in argument had assigned herself an improperly low burden of proof. (See JCAOB 141 and argument 3, *supra* [jury question about the degrees of murder]; see also argument 1.C, *supra* [juror's oral question (8 RT 2051) about the defensive use of a weapon].)

* * * * *

---

7.  (...continued)
Cir. 1992) 970 F.2d 614, 622; *United States v. Wallace* (9th Cir. 1988) 848 F.2d 1464, 1475-1476; *People v. Hill* (1998) 17 Cal.4th 800, 844-845; *People v. Holt* (1984) 37 Cal.3d 436, 459; *People v. Zerillo* (1950) 36 Cal.2d 222, 233; *People v. Jackson* (1991) 235 Cal.App.3d 1670, 1681; *In re Rodriguez* (1981) 119 Cal.App.3d 457, 469-470.)

## Conclusion

Review should be granted. The judgment of the Court of

Appeal affirming the conviction should be reversed.

Respectfully submitted, March 24, 2021.

/s/ *Robert D. Bacon*
**ROBERT D. BACON**
**Attorney for Appellant**

## Certificate of Petition Length
### (Rule 8.504(d)(1))

This petition contains **3,912** words.

I certify under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

/s/ *Robert D. Bacon*
**ROBERT D. BACON**